Richard W. Pierce Law Office, LLC
2nd Floor Alexander Building
P.O. Box 503514 C.K.
Saipan, Northern Marianas Islands 96950
Telephone No. (670) 235-3425
Facsimile No. (670) 235-3427
Email: rwpierce@saipan.com

Attorney for Tomoyuki Nagata, Dr. Jun Takimoto, Mayumi Takimoto and Sali Takimoto, a minor by her next best friend her mother, Mayumi Takimoto,

FILED
Clerk
District Court

AUG -8 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TOMOYUKI NAGATA, DR. JUN TAKIMOTO, MAYUMI TAKIMOTO AND SALI TAKIMOTO, A MINOR BY HER NEXT BEST FRIEND HER MOTHER, MAYUMI TAKIMOTO,<br>Plaintiffs,<br><br>vs.<br><br>BRENT J. HINKEMEYER, TAGA AIR CHARTER SERVICES, INC., TINIAN DYNASTY HOTEL, INC., HONG KONG ENTERTAINMENT (OVERSEAS) INVESTMENT, LTD., and DOES 1-75<br>Defendants. | CIVIL CASE NO. 08-**0034**-<br><br>COMPLAINT<br><br>AND JURY TRIAL DEMAND |

**PARTIES AND JURISDICTION**

1. Plaintiff Tomoyuki Nagata is a citizen and resident of Japan.

2. Plaintiff Dr. Jun Takimoto is a citizen and resident of Japan.

3. Plaintiff Mayumi Takimoto is a citizen and resident of Japan. Plaintiff Mayumi Takimoto is the spouse of Dr. Jun Takimoto. Dr. Jun Takimoto and Mayumi Takimoto constitute a marital community.

1

4. Plaintiff Sali Takimoto is a citizen and resident of Japan. Plaintiff Sali Takimoto is the minor child of Dr. Jun Takimoto and Mayumi Takimoto who bring this action on her behalf, as well as on behalf of themselves and their marital community.

5. Defendant Brent J. Hinkemeyer ("Pilot Hinkemeyer") is a citizen and resident of a state within the United States and was the pilot in command of the Airplane, described below, when it crashed on August 11, 2006. At all times material hereto Pilot Hinkemeyer was employed by Defendant Tinian Dynasty Hotel, Inc., Defendant Taga Air Charter Services, Inc., and/or Defendant Hong Kong Entertainment (Overseas) Investment, Ltd., and all actions/omissions of Pilot Hinkemeyer alleged herein were performed on his own behalf and on behalf of, for the benefit of, as agent for, and/or within the scope of his employment for said defendants.

6. Defendant Taga Air Charter Services, Inc., ("Taga Air"), at all times relevant to this complaint, was a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI.

7. Defendant Taga Air, at all times material hereto, was a common carrier, engaged in the business of providing air transportation and air services, including the transportation of passengers for hire by air, and as such owed the highest degree of care to its passengers. Alternatively, Taga Air was a private air charter company engaged in the business of air transportation, including the transportation, by air, of passengers for hire. At all times material hereto Taga Air was the registered owner and operator of the Aircraft involved in the crash described herein ('the crash") and was responsible for operational control of the Airplane.

8. Defendant Tinian Dynasty Hotel, Inc., ("Dynasty Hotel"), at all times material hereto, was a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI.

9.  On information and belief, Defendant Dynasty Hotel is a business-management service corporation, in partnership with, or otherwise related to the Tinian Dynasty Hotel & Casino.

10. Defendant Hong Kong Entertainment (Overseas) Investment, Ltd. ("Hong Kong Entertainment") is a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI. It is believed to do business under the name Tinian Dynasty Hotel & Casino.

11. With respect to the torts herein alleged, Defendants DOES 1-75, inclusive, are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names, identities, and capacities, whether individual, corporate, or otherwise, are presently unknown to Plaintiffs, except that they include, but are not limited to, other maintenance providers, service providers, inspectors, owners, operators, lessees of the Airplane, and/or the agents, servants, employers, employees, representatives, co-venturers, associates, vendors, suppliers, manufacturers, lessors, insurers, insurance agents, subcontractors or contractors of the named defendants. Plaintiffs are informed and believe and thereon allege, that each of the defendants designated as a DOE is negligently, consciously, willfully, intentionally, knowingly, recklessly, or otherwise tortuously or legally responsible in some manner for the events and happenings referred to herein, and negligently, willfully intentionally, knowingly, recklessly, or otherwise tortuously caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged, either through said defendants' own conduct, or through the conduct of their agents, servants, or employees, and each of them. Plaintiffs and/or their representatives have made diligent and good faith efforts to ascertain the full names and identities and the extent and nature of interests of Doe Defendants, in the events upon which Plaintiff's claims are premised.

12. Plaintiffs remain unable, at this time, to identify with particularity, those additional defendants against whom Plaintiffs have additional prospective claims, and will seek leave to amend this complaint, in order to more specifically name and identify Defendants DOES 1-75, if and when the identities of those defendants are more fully and accurately determined (hereinafter all defendants, including Does 1-75, are referred to, collectively, as the "Defendants").

13. Defendants are a citizen and resident of a state within the United States or are corporations organized under the laws of the Commonwealth of the Northern Mariana Island ("CNMI") or with their respective principal places of business located in the CNMI. The amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00) per plaintiff. Thus, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

14. This civil action is also brought under the provisions of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada, on May 28, 1999, and this Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331. The CNMI law claims alleged herein are so related to claims in the action within this Court's original jurisdiction that the CNMI law claims form part of the same case or controversy. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1367(a).

15. Venue is proper in this jurisdiction in that a substantial part of the events or omissions given rise to the claims occurred in the CNMI.

## REQUEST FOR JURY TRIAL

16. Plaintiffs hereby request that this matter be tried by jury.

# FACTS

17. On or about August 11, 2006, Plaintiffs Tomoyuki and Dr. Jun Takimoto flew as passengers by airplane to the CNMI as paying visitors/tourists to the Tinian Dynasty Hotel & Casino. Their flight originated in Japan and was to terminate on the island of Tinian, CNMI, with a change of planes on the island of Saipan. During the flight from Saipan, CNMI, to Tinian, CNMI, said plaintiffs flew in a Piper Cherokee, model number PA32-300, registration number N4509T (hereinafter the "Airplane"), operated by the defendants. Shortly after takeoff on the flight from Saipan to Tinian, the Airplane lost power and crashed into the jungle on Saipan, CNMI, and thereafter burst into flames destroying the Airplane (the "Crash" or "Incident").

18. Subsequent investigation determined that the Airplane's fuel selector valve was improperly positioned so as to draw fuel from the left outboard wing tip tank, causing the aircraft to lose power shortly after takeoff as a result of fuel starvation. It was the policy of defendant Taga Air, contrary to the Airplane's Flight Manual, to only place fuel in the Airplane's two inboard fuel tanks, keeping the two outboard tip tanks empty or nearly empty.

19. The pilot in command of the Airplane at the time of the crash and at all other times material hereto was defendant Pilot Hinkemeyer.

20. On information and belief, on the date of the crash, August 11, 2006, the Defendants claim to have operated the Airplane and conducted the subject flight under FAR (Federal Aviation Regulations), part 91. However, the FAR required the August 11, 2006 flight to be conducted under FAR, part 135. Moreover, on the day of the Incident, Pilot Hinkemeyer was not authorized to act as pilot in command of the Airplane under FAR, part 135.

21. On or about August 10, 2006, Plaintiffs Nagata and Dr. Jun Takimoto boarded a Northwest Airlines flight at Tokyo Narita International Airport and flew, nonstop, to the Saipan International Airport.

22. On August 11, 2006, immediately after deplaning from the Northwest flight, Plaintiffs Nagata and Dr. Jun Takimoto and other passengers walked over to the domestic terminal located at the Saipan International Airport, under escort and guidance from a CNMI tour agency acting on behalf of defendants, and boarded the Airplane, along with three other passengers, in order to fly to Tinian, CNMI.

23. Prior to August 11, 2006, Plaintiff Nagata purchased round-trip airline tickets from a Japan travel agency in order to fly from Japan to Tinian, CNMI, and return to Japan.

24. Prior to August 11, 2006, Plaintiff Dr. Jun Takimoto made a reservation with Defendants to visit the Tinian Dynasty as a paying guest. Defendants arranged his air transportation from Saipan to Tinian.

25. Prior to August 11, 2006, Defendants Dynasty Hotel and/or Hong Kong Entertainment leased the Airplane from defendant Taga Air Charter Services, Inc. and were, therefore, co-responsible for operational control of the Airplane on August 11, 2006.

26. At the time of the Airplane's August 11, 2006 flight, Defendants Dynasty Hotel and/or Hong Kong Entertainment did not have authorization to conduct air operations under FAR, Part 135, or any other federal regulation.

27. With respect to the torts alleged herein, Defendants Taga Air, Dynasty Hotel and Hong Kong Entertainment acted as each other's agents, within the course and scope of the agency, with respect to the conduct alleged in this complaint and/or were joint venturers.

28. With respect to the torts alleged herein, Plaintiffs are informed and believe and, thereupon, allege that each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things herein alleged, was acting within the course of such agency and employment.

29. With respect to the torts alleged herein, Plaintiffs are informed and believe and, thereupon, allege that each of the Defendants aided, abetted, ratified, authorized, incited, compelled, negligently supervised and/or coerced each act of each remaining Defendant, and/or acted pursuant to a common plan with each remaining Defendant. There exists, and at all relevant times there existed, a unity of interest and ownership between these Defendants such that any individuality and separateness between them ceased and they acted as the alter ego of each other. Adherence to the fiction of the separate existence of these Defendants as distinct entities will permit an abuse of the corporate privilege, sanction fraud and promote injustice.

30. On the day of, and prior to, the Incident, the Defendants serviced, maintained, repaired, certified, operated and/or controlled the Airplane in violation of the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable Federal Aviation Administration (the "FAA") rules and regulations, including, without limitation, the Federal Aviation Regulations.

31. Up to and including the day of the Incident, Taga Air's policy was to fuel only the Airplane's main inboard wing tanks, leaving the Airplane's outboard wing tip tanks empty. Such policies, as well as other actions and policies, were in violation of the explicit language contained in the Airplane's flight, operating and/or owner's manual and applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

32. Additionally, on the day of the Incident, the Airplane was improperly loaded and loaded in excess of its allowable operating weight prior to takeoff, in violation of the Airplane's flight, operating and/or owner's manual, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

33. Further, Defendants failed to obtain sufficient liability insurance on the Airplane and failed to provide the FAA with evidence of such liability insurance for the Airplane.

34. Such failure to procure, and provide the FAA with evidence of liability insurance is a violation of the FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, and certain treaties of the United States.

35. Despite the many deficiencies known to exist with the Airplane, its systems and its crew, the Defendants informed the FAA that the Airplane, and its systems had been inspected and determined to be safe, airworthy and in compliance with FAA rules and regulations including, without limitation, the FAA's airworthiness requirements.

36. Moreover, the Defendants held the Airplane, its systems, and its crew, out to the public, which included Plaintiffs Nagata, Dr. Jun Takimoto, as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including without limitation, the Federal Aviation Regulations.

37. Not less than three months prior to the Incident, Defendants inspected the Airplane and requested that the Airplane be placed on Taga Air's FAR Part 135 certificate. The FAA amended Taga Air's Part 135 Operation Specifications to include the Airplane approximately 1 week before the Incident.

38. The FAA's rules and regulations, including, without limitation, FAR Part 135, require compliance with manufacturer's mandatory service bulletins.

39. Prior to the Incident, the Airplane's manufacturer issued a mandatory service bulletin regarding the installation of shoulder harnesses for all passengers. Defendants determined that compliance with said mandatory service bulletin was required. However, Defendants failed to comply with said mandatory service bulletin such that on the date of the Incident the Airplane did not have harnesses.

## FIRST CAUSE OF ACTION - NEGLIGENCE

40. Plaintiffs incorporate Paragraphs 1 through 39 of the Complaint.

41. The August 11, 2006 crash of the Airplane and resulting injuries and damages to Plaintiffs, were caused by the negligence of the Defendants, including, but not limited to, negligence in the operation, maintenance, certifying, servicing and/or controlling the Aircraft.

42. Said negligence of Defendants, and each of them, as common carriers, innkeepers, or other entities, including their officers, agents, employees and servants, specifically included, but was not limited to the following:

    a. Failing to properly service, maintain, certify, inspect, operate, insure and/or control the Airplane pursuant to the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations;

    b. Failing to provide adequately trained, and/or certified operators of the Airplane;

    c. Failing to properly approve operators of the Airplane and/or,

    d. Failing to properly and adequately train, instruct, educate and/or advise persons maintaining, repairing, operating and controlling the Airplane.

43. Defendants also failed to otherwise exercise due care with respect to the matters alleged in this complaint.

44. The Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, provide duties of care and are designed to protect, inter alia, passengers from the danger and hazards of air travel.

45. Plaintiffs are members of the class which the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, are designed to protect.

46. Plaintiffs suffered the type and kind of harm which the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, were intended to prevent.

47. Moreover, the Airplane was within the exclusive control of Defendants, including their agents, servants, officer and/or other employees and the events leading up to and causing Plaintiffs' injuries are such as in the ordinary course of things would not occur if the one having exclusive control uses proper care, and thus the doctrine of Res Ipsa Loquitur is applicable and should be applied in this case.

48. Defendants' actions as outlined above and herein also constitute negligence per se.

49. The Defendants' above described conduct further constitutes gross negligence, and/or a reckless and/or willful, wanton disregard for Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's

safety and entitles Plaintiffs to an award of punitive damages in an amount according to proof at trial.

50. As a direct and proximate result of the negligence and/or gross negligence of the Defendants, and each of them, Plaintiffs have suffered injuries and damages as are set forth below.

## SECOND CAUSE OF ACTION – WARSAW / MONTREAL CONVENTIONS

51. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 50 of this Complaint.

52. Under the provisions of certain treaties of the United States, including the Warsaw Convention and its progeny, namely the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada, on May 28, 1999, Defendants' conduct, including but not limited to the negligent acts or omissions set forth above, constitutes an accident, in that the conduct was an unexpected and unusual event or happening external to the passengers, Plaintiff Nagata and Plaintiff Dr. Jun Takimoto, and was a causal link to their respective injuries and damages.

53. Such accident took place onboard the Airplane or in the course of any operations of embarking or disembarking. At the time of Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's injuries and damages, each was engaged in undivided international carriage and/or transportation.

54. The negligent acts and/or omissions of Defendants, and each of them, including but not limited to the negligent acts or omissions set forth above, was a proximate cause in Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's injuries and damages.

55. Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's damages, as set forth below, each exceed 100,000 special drawing rights.

56. In addition, and/or in the alternative, Defendants' misconduct was grossly negligent or willful which entitles Plaintiffs to an award of punitive damages in an amount according to proof at trial.

### THIRD CLAIM FOR RELIEF – MISREPRESENTATION

57. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 56 of this Complaint.

58. Defendants misrepresented the safety of the Airplane, its systems, and its crew to the FAA and to the public, including Plaintiff Nagata and Plaintiff Dr. Jun Takimoto, specifically, without limitation, by holding out the Airplane, its systems, and its crew as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations when the Airplane was not in such compliance.

59. Defendants intended to induce the public's reliance, including the Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's reliance, upon such representations. Defendants knew or should have known the statements were false and/or recklessly disregarded the truth in making such representations.

60. Plaintiff Nagata and Plaintiff Dr. Jun Takimoto reasonably relied upon the representations.

61. The Defendants' misrepresentations were a proximate cause of Plaintiff Nagata's and Plaintiff Dr. Jun Takimoto's respective injuries.

62. The representations constituted material misrepresentations that deceptively characterized the Airplane, its systems and its crew as safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives,

Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

63. The Defendants' conduct in making the representations was reckless and wanton.

64. Plaintiff Nagata and Plaintiff Dr. Jun Takimoto were deceived into believing that the Airplane was safe when in fact there was a high likelihood of harm and the resulting harm could be foreseeably devastating.

65. Defendants knew or should have known of the extreme danger that existed. In spite of this knowledge, they willfully and consciously misrepresented the Airplane, its systems and crew as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulation.

66. As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants and each of them as herein alleged, Plaintiffs have sustained and incurred and are certain in the future to sustain and incur injuries and damages as are set forth below.

67. Further, as a result of that reckless and wanton conduct, on the part of the Defendants, Plaintiff Nagata and Plaintiff Dr. Jun Takimoto are each entitled to punitive damages in an amount according to proof at trial.

**FOURTH CLAIM FOR RELIEF – CONSUMER PROTECTION VIOLATION**

68. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 67 of this Complaint.

69. Defendants' conduct in marketing, advertising, selling, servicing, maintaining, inspecting, operating, insuring, controlling and/or placing the Airplane and the service of transporting paying

passengers on the market constitutes violations of the CNMI's Consumer Protection Act, 4 CMC §§ 5101 et seq.

70. Specifically, without limitation, Defendants engaged in the following unfair methods and/or deceptive acts:

(a) Caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Airplane and its crew;

(b) Represented that the Airplane had sponsorship, approval, characteristics, and/or qualities that it did not have and/or that Pilot Hinkemeyer possessed qualifications and experience and was otherwise sponsored, approved, had the appropriated status and/or affiliation that he did not have;

(c) Represented that the Airplane was of a particular standard when the Airplane did not meet that particular standard;

(d) Engaged in acts and/or practices which were unfair or deceptive to Plaintiff Nagata and Plaintiff Dr. Jun Takimoto;

(e) Represented that the Airplane was fit for a particular purpose, when it was not fit for that purpose;

(f) Represented that the service of flying the Airplane was provided by qualified, certified and/or authorized pilot when the Defendants knew or should have known that he was not qualified, certified and/or authorized; and/or,

(g) Introduced into commerce a service which the Defendants knew or should have known was unsafe or which the Defendants knew or should have known would cause an unsafe condition in normal use, including performing a service which may cause an unsafe condition.

71. As a direct and proximate result of said wrongful acts of the Defendants, Plaintiffs have suffered and will suffer injuries and damages as are set forth below.

72. In addition to actual damages, Plaintiff Nagata and Plaintiff Dr. Jun Takimoto are each entitled to liquidated damages and attorney's fees and costs.

**FIFTH CLAIM FOR RELIEF – SPOUSAL AND PARENT-CHILD RELATIONSHIP**

73. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 72 of this Complaint.

74. As a result of Defendants' conduct as alleged herein, Plaintiffs Mayumi Takimoto and Sali Takimoto have been deprived of Dr. Jun Takimoto's support, care, consideration, companionship, aid, society and assistance. This loss has caused and continues to cause Plaintiffs Mayumi Takimoto and Sali Takimoto to suffer harm and damage.

75. Accordingly, Plaintiffs Mayumi Takimoto and Sali Takimoto have each sustained and incurred damages as set forth below.

**GENERAL DAMAGES FOR FIRST THROUGH FIFTH CLAIMS FOR RELIEF**

76. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 75 of this Complaint.

77. As a direct and proximate result of the wrongful actions of the Defendants, Plaintiff Tomoyuki Nagata has sustained injuries and damages in the past, which continue presently and will continue in the future. Said injuries and damages include, but are not limited to, cost of medical care and medication; time loss, loss of earnings and earning capacity; physical injury, pain, suffering, disfigurement, and disability; mental and emotional distress, anxiety and suffering; reduction in the capacity to enjoy life; property damage; pre- and post-crash fear of impending death; travel and other miscellaneous expenses related to Plaintiff Tomoyuki Nagata's

injuries and medical care; cost of nursing care and the reasonable cost of care provided by family members; and other general and special damages which will be proven at the time of trial.

78. As a direct and proximate result of the wrongful actions of the Defendants, Plaintiff Dr. Jun Takimoto has sustained injuries and damages in the past, which continue presently and will continue in the future. Said injuries and damages include, but are not limited to, cost of medical care and medication; time loss, loss of earnings and earning capacity; physical injury, pain, suffering, disfigurement, and disability; mental and emotional distress, anxiety and suffering; reduction in the capacity to enjoy life; property damage; pre- and post-crash fear of impending death; travel and other miscellaneous expenses related to Plaintiff Dr. Jun Takimoto's injuries and medical care; cost of nursing care and the reasonable cost of care provided by family members; loss of consortium, and other general and special damages which will be proven at the time of trial.

79. As a direct and proximate result of the wrongful actions of the Defendants, Plaintiff Mayumi Takimoto has sustained injuries and damages in the past, which continue presently and will continue in the future. Said injuries and damages include, but are not limited to, loss of consortium, care, comfort and society; loss of support and spousal services, economic loss; and other general and special damages which will be proven at the time of trial.

80. As a direct and proximate result of the wrongful actions of the Defendants, Plaintiff Sali Takimoto has sustained injuries and damages in the past, which continue presently and will continue in the future. Said injuries and damages include, but are not limited to, loss of consortium, care, comfort and society; loss of support and spousal services; economic loss; and other general and special damages which will be proven at the time of trial.

### PRAYER FOR RELIEF FOR FIRST THROUGH FIFTH CLAIMS

Wherefore, Plaintiffs pray for judgment against the Defendants, jointly and severally, in amounts to be proven at trial, to fully and fairly compensate Plaintiffs for the damages set forth

above, together with costs, attorney fees, liquidated damages and pre-and post judgment interest as allowed by law, punitive damages, and such other and further relief as the Court deems just and equitable under the circumstances.

## SIXTH CLAIM FOR RELIEF

(Alternative Claims for Plaintiffs Nagata and Dr. Jun Takimoto)

81. Plaintiffs repeat and re-allege, and incorporate herein by reference, Paragraphs 1 through 80 of this Complaint.

82. This Sixth Claim for Relief is brought in the alternative and without waiver of the First through the Fourth Claims for Relief.

83. On or about August 2007, Defendants Taga Air and "Tinian Dynasty Hotel & Casino" entered into an agreement with Plaintiff Nagata for the payment of money to Plaintiff Nagata in return for his release of all claims from the Incident against Taga Air, "Tinian Dynasty Hotel & Casino" and Pilot Hinkemeyer (hereinafter the "Nagata Agreement"). The terms of the Nagata Agreement are set forth in writing.

84. "Tinian Dynasty Hotel & Casino" made payments on the Nagata Agreement until on or about April 2008, and then ceased making payments. Money is due and owing under the Nagata Agreement to Plaintiff Nagata. "Tinian Dynasty Hotel & Casino" has admitted that it is in breach and default of the Nagata Agreement.

85. On or about November 2007, Defendants Taga Air and "Tinian Dynasty Hotel & Casino" entered into an agreement with Plaintiff Dr. Jun Takimoto for the payment of money to Plaintiff Dr. Jun Takimoto in return for his release of all claims from the Incident against Taga Air, "Tinian Dynasty Hotel & Casino" and Pilot Hinkemeyer (hereinafter the "Dr. Jun Takimoto Agreement"). The terms of the Takimoto Agreement are set forth in writing.

17

86. "Tinian Dynasty Hotel & Casino" made payments on the Dr. Jun Takimoto Agreement until on or about April 2008, and then ceased making payments. Money is due and owing under the Dr. Jun Takimoto Agreement to Plaintiff Dr. Jun Takimoto. "Tinian Dynasty Hotel & Casino" has admitted its default of the Dr. Jun Takimoto Agreement.

87. Defendants Taga Air and "Tinian Dynasty Hotel & Casino" have materially breached the Nagata Agreement and the Dr. Jun Takimoto Agreement.

88. As a result of the material breach of each agreement, Plaintiffs Nagata and Dr. Jun Takimoto have each been deprived of the benefit of their respective bargains and each suffered damages, including prejudgment interest.

## PRAYER FOR RELIEF FOR SIXTH CLAIM

Wherefore, Plaintiff Nagata and Plaintiff Dr. Jun Takimoto pray for judgment against Taga Air and "Tinian Dynasty Hotel & Casino", jointly and severally, in amounts to be proven at trial, to fully and fairly compensate for the damages caused by the breach of the Nagata Agreement and the Dr. Jun Takimoto Agreement, together with costs, attorney fees, pre-and post judgment interest as allowed by law, and such other and further relief, including a judgment of specific performance, as the Court deems just and equitable under the circumstances.

Dated this August 8, 2008.

Respectfully submitted,

RICHARD W. PIERCE LAW OFFICE, LLC

By: _____
RICHARD W. PIERCE
Attorney for Tomoyuki Nagata, Dr. Jun Takimoto, Mayumi Takimoto and Sali Takimoto, a minor by her next best friend her mother, Mayumi Takimoto.